IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TERRI PETERSON, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) ) ) ) | No. 1:18-cv-01164-STA-jay |
| WEST TN EXPEDITING, INC., | ) ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL**

Plaintiff Terri Peterson filed this action against West TN Expediting, Inc., alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and state law claims under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101.[1] Plaintiff alleged that Defendant subjected her to a sexually hostile work environment and terminated her employment in retaliation for her opposition to Defendant's discriminatory employment practices. The case was tried by a jury during the week of February 18, 2020. On February 21, 2020, the jury found in favor of Plaintiff on her claim that Defendant unlawfully retaliated against her by terminating her from its workforce in response to her reports of workplace sexual harassment. The jury found in favor of Defendant on Plaintiff's claim that she was subjected to a sexually hostile work

---

[1] The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims arose out of the same alleged nucleus of facts upon which the federal claims are based.

environment. Plaintiff was awarded $50,000 in back pay and fringe benefits and $100,000 in punitive damages. (Ver., ECF No. 52; Judg., ECF No. 54.)

On March 19, 2020, Defendant filed a motion for new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure on the ground that the verdict was against the weight of the evidence. (ECF No. 57.) Defendant filed a supplemental motion for new trial on March 23, 2020. (ECF No. 59.)[2] Plaintiff filed a response to the motions on April 7, 2020. (ECF No. 62.) For the reasons set forth below, Defendant's motion is **DENIED**.[3]

After a jury trial, district courts may grant a new trial on all or some of the claims pursuant to Rule 59(a) "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Sixth Circuit has interpreted this language to mean that a new trial is warranted under Rule 59(a) "when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996). Additionally, a party may move for a new trial based on a trial court's erroneous admission of evidence or improper jury instructions amounting to "more than harmless error." *Kendel v. Local 17–A UFCW*, 512 F. App'x 472, 479 (6th Cir. 2013).[4]

---

[2] The supplemental motion is not timely under Rule 59(b), which provides that a motion for new trial must be filed within twenty-eight days of the judgment. However, Plaintiff has not raised the untimeliness of the motion as an issue, and it appears that the supplemental motion tracks the original motion. Therefore, the Court will consider both the motion and the supplemental motion. However, the better course of action would have been for Plaintiff to obtain permission to file the supplemental motion.

[3] Plaintiff's motion for attorney's fees (ECF No. 66) is addressed in a separate order.

[4] It is unclear from Defendant's motion whether it contends that the jury instructions were flawed in some manner. In the Sixth Circuit, to preserve objections to jury instructions, a party

In deciding a Rule 59 motion based on the weight of the evidence, the Court "must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence." *Strickland v. Owens Corning*, 142 F.3d 353, 357 (6th Cir. 1998). The Court "should deny the motion if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *Id.* That is, the "court is not to set aside the verdict simply because it believes that another outcome is more justified." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007); *accord Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967) (explaining that "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable" (internal quotation marks omitted)).

Title VII prohibits an employer from retaliating against an employee who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).  In order to prevail on a retaliation claim, a plaintiff must demonstrate that she (1) engaged in activity protected by Title VII; (2) the defendant knew of her protected activity; (3) thereafter, the defendant took adverse action against her; and (4) a causal connection existed between the protected activity and the materially adverse action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer some legitimate, nonretaliatory reasons for its actions. *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990) (citing *McDonnell*

---

must not only object prior to the Court's charge to the jury, it must renew those objections after the jury receives its instructions absent certain exceptions not present here.  See *Scott v. Miller*, 361 F. App'x 650, 653 (6th Cir. 2010).  Defendant did not do so in this case.

3

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To the extent the defendant proffers such reasons, the burden of persuasion shifts back to the plaintiff to show that the proffered reasons were not the true reasons for the employment decision, i.e., that the reasons were a pretext for retaliation. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–16 (1993); *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Furthermore, the plaintiff must show but-for causation to establish the retaliation claim. This standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated [or retaliated] against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

After a jury trial, in deciding a Rule 59 motion, the Court proceeds to the question of whether the defendant retaliated against the plaintiff because of her protected activity, and the issue of a causal connection is part of that inquiry. *See Kovacevich v. Kent State Univ.*, 224 F.3d 806, 825 (6th Cir. 2000) ("Of course, there is nothing to prevent the court from considering evidence that also bears on that prima facie case as long as it does so in order to address the ultimate question of discrimination.")

In the present case, the jury heard the evidence and returned a verdict in favor of Plaintiff on her retaliation claim and awarded punitive damages. The jury found that Defendant unlawfully retaliated against Plaintiff by removing her from its workforce in response to her reports of workplace sexual harassment. Plaintiff presented undisputed evidence that she made more than one report of sexual harassment, including making a report on June 1, 2017. After reporting the sexual harassment in June 2017, Plaintiff was never again scheduled to work for Defendant. The jury found Defendant's conduct to have been malicious and/or recklessly indifferent to Plaintiff's

4

federally protected rights, thus entitling her to punitive damages.

Defendant argues that the "clear weight of the evidence" is against the jury's verdict and was caused by the jury's misunderstanding the jury instructions. Specifically, Defendant claims that no adverse action was taken against Plaintiff because Jeff Buckner, Defendant's owner, offered to allow Plaintiff to return to work and team-drive with her boyfriend, Billy Burse, after her June 2017 complaint of sexual harassment against James Corbin, the team-driver she had been riding with. Defendant also contends that Plaintiff could have driven with Defendant's other female driver, Velma Hernandez. According to Defendant, allowing Plaintiff to team-drive with any of its other male drivers was not a viable option because they were all married. Defendant notes that Plaintiff could not have driven by herself because she did not have a Commercial Driver's License ("CDL"). Defendant does not contest that Plaintiff engaged in a protected activity of which it was aware, i.e., complaining of sexual harassment by Corbin.

The evidence at trial showed that Plaintiff was hired as a truck driver for Defendant trucking company. Defendant placed James Corbin as Plaintiff's supervisor with authority related to her direction, supervision, and training related to the acquisition of Plaintiff's CDL. It was necessary for Plaintiff to team-drive a certain amount of hours in order to obtain her CDL. Plaintiff and Corbin were required to work together in the same truck for thousands of miles each workweek.

During her employment, Plaintiff alleged that she experienced sexual assault and sexual harassment by Corbin with the first incident occurring on April 7, 2017, which she reported to Defendant's Operations Manager, Terry Dawn Peevyhouse.

Plaintiff team-drove with Corbin from her initial hire date until she made a June 2017 report of sexual harassment by him. After her June 2017 complaint, Buckner made the decision that

Plaintiff would not be allowed to drive with Corbin again. Buckner offered to hire Billy Burse to drive with Plaintiff, but Burse did not accept the job. After Burse refused the job offer, it is undisputed that Plaintiff was never again scheduled to work for Defendant. Buckner testified at trial that, had Plaintiff not made the sexual assault report against Corbin on June 1, 2017, she would have been scheduled to drive the following week. (TR PageID 469, ECF No. 55.)

Although Defendant contends that Plaintiff was presented with the option of team- driving with Velma Hernandez, there is evidence from which the jury could find that Plaintiff was never told of this option. Buckner testified that he did not make such an offer to Plaintiff. (*Id.* at PageID 501, 502.) In text messages between Plaintiff and Buckner, no mention was made of her working with Hernandez. (*Id.* at PageID 501 - 503.) Moreover, in his deposition which was read at trial, Buckner acknowledged that he did not explore any employee options with Plaintiff because he thought she would be able to drive with Burse. (*Id.* at PageID 530, 531.) After Plaintiff told Buckner that Burse did not want to leave his job to work for Defendant, Buckner did not suggest any other options, and Plaintiff was never again scheduled to drive for Defendant. (*Id.* at PageID 533, 534.)

Terri Peevyhouse testified that, if Plaintiff had not made the June 2017 report of harassment, she would have continued to have been scheduled to drive with Corbin. (*Id.* at PageID 614, 615.) Corbin continued to be scheduled as a driver despite Plaintiff's allegations. (*Id.* at PageID 616.) According to Peevyhouse, she had no one else to schedule Plaintiff to drive with. She testified that she could not schedule Plaintiff with the other male drivers because "their wives don't want someone riding with their husband." (*Id.* at PageID 615.) Peevyhouse also testified that, after the June 2017 report, she did not tell Plaintiff that Velma Hernandez was willing to drive

with her.[5] (*Id.* at PageID 619, 620.)  Plaintiff confirmed that Peevyhouse never mentioned Hernandez to her. (*Id.* at PageID 670.)

Although Defendant appears to argue that the onus was on Plaintiff to present driving options in order to keep her job, the jury could reasonably find that Defendant had an obligation to look into all options to find someone to team-drive with her and that Defendant did not meet its obligation.  For example, Buckner or Peevyhouse could have contacted Hernandez after the June 2017 report to see if she remained willing to allow Plaintiff to drive with her.  And, rather than assuming that none of the male drivers would allow Plaintiff to drive with them "because of their wives," Buckner or Peevyhouse could have contacted them and asked if they would do so.  Instead, Peevyhouse testified, "And most of them are married men. And that's just not an option."  (*Id.* at PageID 631, 634.)  In answer to the question, "Did you explore the option of putting Terri Peterson with another male driver," Peevyhouse admitted that she had not. (*Id.* at PageID 634.)  Buckner and Peevyhouse's unwillingness to attempt to find another driver for Plaintiff after the June 2017 report and their subsequent failure to schedule her to drive serve as a reasonable basis for the jury's finding that Defendant took an adverse action against her by terminating her employment because of her June 2017 report of sexual harassment.

The jury could also reasonably find that the evidence showed that "but-for" Plaintiff's June 2017 report she would have been allowed to continue to work for Defendant.  Evidence was presented from which the jury could find that neither Buckner nor Peevyhouse made a good faith attempt to find another driver with whom Plaintiff could ride.  Without another driver, Plaintiff was not put on the work schedule, thus ending her employment with Defendant.

---

[5] Peevyhouse testified that Hernandez had agreed to allow Plaintiff to drive with her at some point after Plaintiff's April 2017 report of sexual harassment, but she also testified that the option was not pursued after the June 2017 report.

7

In addition to this evidence, the jury could infer causation between Plaintiff's June 2017 report and the termination of her employment due to their close temporal proximity. *See*, *e.g.*, *Gaskins v. Rock-Tenn Corp.*, 982 F. Supp. 2d 760, 770 (S.D. Ohio 2013) (relying on *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008), to find that, in the context of a claim of retaliatory discharge, "temporal proximity between the events can be sufficient to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation").

As for the award of punitive damages, such damages are recoverable in a Title VII action when evidence is presented that an employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). A plaintiff must show that the individual perpetrating the retaliation acted with malice or reckless indifference toward the plaintiff's federally protected rights. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999) (quoting § 1981a(b)(1)). A plaintiff satisfies this prong by demonstrating that the alleged retaliator acted "in the face of a perceived risk that its actions will violate federal law." *Id.* Next, the plaintiff must demonstrate that the retaliatory actor worked in a managerial capacity and acted within the scope of his employment. *Id.* at 539–41. The defendant may avoid punitive damages by showing that it engaged in good-faith efforts to comply with Title VII. *Id.* at 544–46.

Clearly, Buckner and Peevyhouse acted in "a managerial capacity." And, there was sufficient evidence from which the jury could find that, by not scheduling Plaintiff to work after she made her June 2017 report, Buckner and Peevyhouse acted with malice and/or reckless indifference to Plaintiff's federally protected right to complain of sexual harassment. Specifically, as discussed above, they made little or no effort to find her another team-driver and, instead, removed her from the work schedule. Thus, the jury could reasonably reject Defendant's

contention that Buckner and Peevyhouse acted in good faith.

Defendant contends that it could not have acted with malice or reckless indifference because Plaintiff did not have a valid CDL and the law does not allow a person to drive a truck in interstate commerce without a CDL. Defendant submits that Plaintiff's lack of a CDL was a legitimate business reason for not rescheduling her. Defendant's argument is disingenuous. The evidence at trial was undisputed that Plaintiff was employed by Defendant prior to her report of sexual harassment without a CDL. It was only after she made her June 2017 report that she was not scheduled to work again.

There was sufficient evidence presented at trial from which the jury could reasonably find that Defendant retaliated against Plaintiff after she complained of sexual harassment and that Defendant acted with malice or reckless indifference to her federally protected rights so as to support an award of punitive damages. Accordingly, Defendant's motion for new trial is **DENIED**.

    **IT IS SO ORDERED.**

                                                           s/ S. Thomas Anderson
                                                           S. THOMAS ANDERSON
                                                           CHIEF UNITED STATES DISTRICT JUDGE

                                                           Date:   June 26, 2020.